UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TRACY G.[1],

|                       |                                           |
|-----------------------|-------------------------------------------|
| Plaintiff,            | Civil Action No. 22-12308                 |
| v.                    | Sean F. Cox                               |
|                       | United States District Judge              |
| COMMISSIONER OF       |                                           |
| SOCIAL SECURITY,      | David R. Grand                            |
|                       | United States Magistrate Judge            |
| Defendant.            |                                           |

_____/

**REPORT AND RECOMMENDATION ON**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 13, 15)**

Plaintiff Tracy G. ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g),

challenging the final decision of Defendant Commissioner of Social Security

("Commissioner") denying her application for Supplemental Security Income ("SSI")

under the Social Security Act (the "Act"). Both parties have filed summary judgment

motions (ECF Nos. 13, 15), which have been referred to this Court for a Report and

Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

**I.      RECOMMENDATION**

For the reasons set forth below, the Court finds that the Administrative Law Judge's

("ALJ") conclusion that Plaintiff is not disabled under the Act is not supported by

substantial evidence. Thus, the Court **RECOMMENDS** that the Commissioner's Motion

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of
the United States has recommended that, due to significant privacy concerns in social security
cases, federal courts should refer to claimants only by their first names and last initials.

for Summary Judgment **(ECF No. 15)** be **DENIED**, Plaintiff's Motion for Summary

Judgment **(ECF No. 13)** be **GRANTED IN PART** to the extent it seeks remand and

**DENIED IN PART** to the extent it seeks an award of benefits, and that, pursuant to

sentence four of 42 U.S.C. § 405(g), this case be **REMANDED** for further proceedings

consistent with this Report and Recommendation.

## II.    REPORT

### A.    Background

Plaintiff was 49 years old at the time of her amended alleged onset date of July 15,

2020, and at 5'3" tall weighed approximately 210 pounds.  (PageID.73, 92, 115, 250).[2]

She earned a GED but had no further education.  (PageID.251).  Previously, Plaintiff

worked as a caregiver at an assisted living facility.  (PageID.74, 251).  However, she

stopped working in 2017, both because of her medical conditions and because her

stepdaughter, who suffers from cerebral palsy, required full-time care.  (PageID.74, 77,

230, 250, 724).  She now alleges disability primarily as a result of low back pain, recurrent

hernias, chest pain stemming from a prior broken sternum, anxiety, and depression.

(PageID.78-80, 86, 115, 250, 261).

After Plaintiff's application for SSI was denied at the initial level on December 2,

2020 (PageID.126-29), and on reconsideration on April 28, 2021 (PageID.139-40), she

timely requested an administrative hearing, which was held on September 2, 2021, before

ALJ Margaret O'Donnell (PageID.68-91).  Plaintiff, who was represented by attorney

---

[2] Standalone citations to "PageID.___" are all to the administrative transcript in this case, which can be found at ECF No. 9.

Frank Cusmano, testified at the hearing, as did vocational expert ("VE") Mark Richards. (*Id.*).  On September 17, 2021, the ALJ issued a written decision finding that Plaintiff is not disabled under the Act.  (PageID.48-62).  On August 19, 2022, the Appeals Council denied review.  (PageID.34-38).  Plaintiff timely filed for judicial review of the final decision on September 28, 2022.  (ECF No. 1).

**B.      The ALJ's Application of the Disability Framework Analysis**

Under the Act, SSI is available only for those who have a "disability."  *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 1382c(a)(3)(A).  The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

> Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, No. 11-10593, 2011 WL 6937331, at \*7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. § 404.1520); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).  "The burden of proof is on the claimant throughout the first four steps ….  If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]."  *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Following this five-step sequential analysis, the ALJ found that Plaintiff is not disabled under the Act.  At Step One, the ALJ found that Plaintiff has not engaged in substantial gainful activity since July 15, 2020 (the application date).  (PageID.50).  At Step Two, the ALJ found that she has the severe impairments of hernias and obesity.[3]  (*Id.*).  At Step Three, the ALJ found that Plaintiff's impairments, whether considered alone or in combination, do not meet or medically equal a listed impairment.  (PageID.53).

The ALJ then assessed Plaintiff's residual functional capacity ("RFC"), concluding that she is capable of performing the full range of light work.  (*Id.*).  At Step Four, the ALJ found that Plaintiff is unable to perform any of her past relevant work.  (PageID.61).  At Step Five, the ALJ determined, based on application of Medical-Vocational Rule 202.14 (the "Grids"), that Plaintiff is not disabled under the Act.  (PageID.61-62).

---

[3] As discussed in greater detail below, *infra* at 10-11, the ALJ specifically found Plaintiff's low back pain and mental impairments (anxiety and depression) to be non-severe impairments. (PageID.51-52).

4

**C.     Standard of Review**

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record."  *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted).  The phrase "substantial evidence" is a "term of art …."  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).  "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations."  *Id*. (internal citations omitted).  "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high.  Substantial evidence …  is 'more than a mere scintilla.'"  *Id.* (internal citations omitted).  Specifically, "[i]t means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Id.* (internal citations omitted).

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole.  *See Bass v. McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007); *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ.  *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).

5

There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record.  *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted).  If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion."  *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted).

### D.    Analysis

As set forth above, the ALJ found that Plaintiff has the severe impairments of hernias and obesity.  (PageID.50).  The ALJ also found at Step Two that Plaintiff's low back pain, generalized anxiety disorder, and depression – while medically determinable impairments – do not cause more than a minimal limitation on her ability to perform basic work activities and, thus, are non-severe within the meaning of the Act.  (PageID.51-52). Plaintiff now makes two arguments as to these issues.  First, Plaintiff challenges the ALJ's evaluation of her low back pain and mental impairments at Step Two, contending that the ALJ should have found them to be severe.  (ECF No. 13).  Second, Plaintiff contends that the ALJ failed to consider the effects of these impairments in formulating her RFC.  (*Id.*).

#### 1.    *The Relevant Medical Evidence*

##### a.    *Low Back Pain*

In assessing the severity of Plaintiff's low back pain, the ALJ noted that she had a "history of back pain which, pursuant to the consultative examiner, is of undetermined

etiology [PageID.723-32]." (PageID.51). Indeed, Plaintiff's medical records show that, throughout 2020 and 2021,[4] she treated with her primary care physician, Charles Ellsworth, D.O., for chronic conditions that included ongoing low back pain. (PageID.559-60, 562-63, 566-67, 574, 639-40, 642-43, 701-04). For back pain, Dr. Ellsworth maintained Plaintiff on cyclobenzaprine, a muscle relaxant (10 mg/twice a day), and hydrocodone-acetaminophen, a pain medication (10-325 mg/four times a day). (*Id.*). Plaintiff testified and reported (both to Dr. Ellsworth, and in other self-reports) that these medications made her sleepy and fatigued. (PageID.79, 268, 659, 664).

In addition to documentation from Plaintiff's visits to her treating physician, the record contains four different medical opinions that consider her low back pain:

- On November 19, 2020, Plaintiff underwent a physical consultative examination with Harold Nims, D.O. (PageID.723-32). As the ALJ noted, examination of Plaintiff's lumbar spine was within normal limits; she exhibited no tenderness or paravertebral muscle spasm; and she had normal straight leg raising in the sitting and supine positions. (PageID.59, 726). However, Plaintiff was able to bend and squat only halfway. (PageID.728). Dr. Nims took x-rays of Plaintiff's lumbar spine, which showed "moderate narrowing" at L5-S1; "mild anterior subluxation of L4 on L5"; hypertrophic degenerative changes throughout the posterior articular facets of the lumbar spine, worse from L3 through S1; and minimal anterior degenerative spurring at several levels. (PageID.732). In summary, Dr. Nims opined that Plaintiff's "ability to perform work-related activities such as bending, stooping, lifting, walking, crawling, squatting, carrying and traveling as well as pushing and pulling heavy objects is at least mildly impaired due to the objective findings discussed above." (PageID.727).

- On December 1, 2020, Barbara Menzies, M.D. reviewed Plaintiff's records and opined that her spine disorder is a "severe" impairment. (PageID.101. Dr. Menzies further opined that Plaintiff can occasionally lift and/or carry 20 pounds and frequently lift and/or carry 10 pounds; stand and/or walk 6 hours

---

[4] Actually, as far back as 2013 and 2016, imaging tests showed degenerative changes of Plaintiff's lumbar spine and right SI joint. (PageID.333, 516).

in an 8-hour workday; sit 6 hours in an 8-hour workday; occasionally climb ramps/stairs, stoop, kneel, crouch, and crawl; and never climb ladders, ropes, or scaffolds.  (PageID.105-06).

- On April 21, 2021, Myung Ho Hahn, M.D. reviewed Plaintiff's records on reconsideration, again concluding that Plaintiff's spine disorder is "severe" and largely affirming Dr. Menzies' opinion with respect to Plaintiff's physical limitations.  (PageID.119, 121).

- On March 10, 2021, Plaintiff's treating physician, Dr. Ellsworth completed a Medical Source Statement (Physical).  (PageID.659-62).  In relevant part, Dr. Ellsworth diagnosed low back pain and cited "back tenderness" as a clinical finding supporting that diagnosis.  (PageID.659).  Dr. Ellsworth opined that Plaintiff would be "off task" 25% or more of a typical workday due to her symptoms; could sit for 1 hour at a time and stand for 1 hour at a time (less than 2 hours total for each in an 8-hour workday); required unscheduled breaks; must elevate her legs with prolonged sitting; could never lift even 10 pounds; and could never twist, stoop, crouch/squat, or climb ladders or stairs.  (PageID.660-62).

### b. *Mental Impairments*

Throughout 2020 and 2021, Plaintiff also treated with Dr. Ellsworth for depression and anxiety.  For these conditions, Dr. Ellsworth prescribed sertraline (150 mg/once a day).  (PageID.561, 565, 569, 576, 639, 644, 704).  In September 2020, when these conditions continued to worsen, Dr. Ellsworth added alprazolam (0.5 mg/twice a day), a prescription he continued through the rest of the relevant time period.  (PageID.639, 643, 704).

In addition to documentation from Plaintiff's visits to her treating physician, the record also contains four different medical opinions that consider her mental impairments:

- On October 15, 2020, Plaintiff underwent a psychological consultative examination with Matthew Dickson, Ph.D.  (PageID.717-20).  Plaintiff reported that she was in a physically abusive relationship for 12 years, which ended when her partner "shot himself in the house[.]"  (PageID.717).  As the ALJ noted, Dr. Dickson diagnosed Plaintiff with generalized anxiety disorder with depressed features, and a skin-picking disorder (excoriation).  (PageID.58 (citing PageID.720)).  He opined that Plaintiff's mental abilities

8

to understand, attend to, remember, and carry out instructions of work-related behaviors are not overtly impaired; her abilities to perform activities within a schedule, at a consistent pace, maintain regular attendance, be punctual within customary tolerances, and complete a normal workday and workweek without interruptions from psychological symptoms are mildly impaired; her abilities related to social interaction such as responding appropriately to coworkers, supervisors, and others in the workplace are mildly impaired; and her abilities to deal with normal pressures in a competitive work environment are mildly impaired. (PageID.58, 719). Dr. Dickson characterized Plaintiff's prognosis as guarded. (PageID.720).

- On October 22, 2020, Natalie Rea-Michalak, Ph.D. reviewed Plaintiff's records and opined that she has the "severe" impairments of depressive, bipolar, and related disorders, and anxiety and obsessive-compulsive disorders. (PageID.101). Dr. Rea-Michalak assessed no limitations in Plaintiff's ability to understand, remember, or apply information; moderate limitations in the ability to interact with others; mild limitations in the ability to concentrate, persist, or maintain pace; and mild limitations in the ability to adapt or manage oneself. (PageID.102). Dr. Rea-Michalak found Plaintiff moderately limited in the ability to interact appropriately with the general public but opined that she retains the ability to perform "detailed work activities." (PageID.108-09).

- On April 20, 2021, Dr. Jerry Csokasy reviewed Plaintiff's records at the reconsideration stage and opined that her anxiety and obsessive-compulsive disorders are "severe." (PageID.119). Dr. Csokasy assessed mild limitations in Plaintiff's ability to understand, remember, or apply information; moderate limitations in the ability to interact with others; moderate limitations in the ability to concentrate, persist, or maintain pace; and mild limitations in the ability to adapt or manage oneself. (*Id.*). Dr. Csokasy opined that Plaintiff "would have difficulty completing complex tasks on a sustained basis" and "needs [an] environment with [only] occasional contact with others." (PageID.122-23).

- On March 10, 2021, Plaintiff's treating physician, Dr. Ellsworth completed a Medical Source Statement (Mental). (PageID.664-67). In an opinion dated the same day, Dr. Ellsworth listed Plaintiff's diagnoses as depression and anxiety and characterized her prognosis as guarded. (PageID.659). In his opinion regarding Plaintiff's mental functioning, Dr. Ellsworth opined that Plaintiff would be "off task" 25% or more of a typical workday due to her symptoms. (PageID.665). He further opined that Plaintiff has "no useful ability to function" or is "unable to meet competitive standards" in numerous areas required to perform even unskilled work. (PageID.666).

9

2.      *The ALJ's Step Two Evaluation*

At Step Two of the sequential evaluation process, the ALJ must consider whether a claimant has a severe impairment.  *See* 20 C.F.R. § 416.920(a)(4)(ii).  The applicable regulations generally define a "severe" impairment as an "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities …." 20 C.F.R. § 416.920(c).  Basic work activities are defined in the regulations as "the abilities and aptitudes necessary to do most jobs."  20 C.F.R. § 416.922(b).  Examples include: (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting.  *See id.*  The Sixth Circuit has "characterized step two of the disability determination process as a 'de minimis hurdle.'"  *Despins v. Comm'r of Soc. Sec.*, 257 F. App'x 923, 929 (6th Cir. 2007) (quoting *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988)).

In her motion, Plaintiff argues that the ALJ's Step Two finding – that her low back pain and mental impairments are non-severe – is not supported by substantial evidence.  (ECF No. 13, PageID.761-62).  In support of this argument, Plaintiff notes that the state agency reviewers found these impairments severe, and that her treating physician and both consultative examiners assessed a number of limitations due to these impairments.  (*Id.*).  In response, the Commissioner concedes that, while the record includes at least some evidence supporting Plaintiff's argument that her back and mental impairments are severe,

the ALJ cited evidence in support of her finding of non-severity, and Plaintiff is simply impermissibly asking this Court to re-weigh the evidence.  (ECF No. 15, PageID.785-86). Ultimately, although the medical opinion and other record evidence would seem to satisfy the "*de minimis*" standard that applies at Step Two, the Court need not resolve that particular issue.  Even assuming the ALJ's Step Two finding of non-severity is supported by substantial evidence, the ALJ nevertheless erred in failing to properly consider the effects of these impairments on Plaintiff's RFC.

3.      *The ALJ's RFC Finding is Not Supported by Substantial Evidence*

An individual's RFC is a medical assessment of what she can do in a work setting in spite of functional limitations and environmental restrictions imposed by all of her medically determinable impairments, including those that are non-severe.  *See* 20 C.F.R. § 416.945.  As the Sixth Circuit has recognized, in determining an individual's RFC, "[o]nce one severe impairment is found, the combined effect of all impairments must be considered, even if other impairments would not be severe."  *White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 787 (6th Cir. 2009); *see also* 20 C.F.R. § 416.923(c) ("In determining whether your physical or mental impairment or impairments are of a sufficient medical severity … we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. If we do find a medically severe combination of impairments, we will consider the combined impact of the impairments throughout the disability determination process."); 20 C.F.R. § 416.945(a)(2) ("If you have more than one impairment.  We will consider all of your medically determinable impairments of which we are aware, including your medically

determinable impairments that are not 'severe,' as explained in §§ 416.920(c), 416.921, and 416.923, when we assess your residual functional capacity.").   Moreover, Social Security Ruling 96-8p provides that:

> In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not "severe."  While a "not severe" impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may – when considered with limitations or restrictions due to other impairments – be critical to the outcome of a claim.  For example, in combination with limitations imposed by an individual's other impairments, the limitations due to such a "not severe" impairment may prevent an individual from performing past relevant work or may narrow the range of other work that the individual may still be able to do.

*Social Security Ruling 96-8p*, 1996 WL 374184, at *5 (July 2, 1996).  The law is clear, then, that, in assessing Plaintiff's RFC, once the ALJ determined that Plaintiff suffers from severe physical impairments – here, hernias and obesity – she was required to consider these severe impairments in combination with all non-severe impairments, including Plaintiff's low back pain, anxiety, and depression.  *See White*, 312 F. App'x at 787; *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 190-91 (6th Cir. 2009) (once the ALJ determined that the claimant suffered from severe physical impairments, he also was required to consider her non-severe mental impairments in assessing her RFC).

In this case, it is – at best – unclear whether the ALJ considered the effects of Plaintiff's low back pain, anxiety, and depression in formulating her RFC.  In summarizing Plaintiff's RFC finding, the ALJ stated only: "The claimant's severe impairments of hernias and obesity limit her to performing a full range of work at [the] light exertional level …."  (PageID.61).  Arguably, this suggests the ALJ's RFC finding is based only on

these two severe impairments.  The Commissioner points out, however, that elsewhere in her decision, the ALJ discussed Plaintiff's "subjective allegations about her back and mental impairments as well as the prior administrative medical findings and medical opinions that assessed limitations based on those conditions," arguing that this is "sufficient to show that the ALJ considered both the severe and non-severe impairments in her RFC finding."  (ECF No. 15, PageID.787).  For the reasons set forth below, even if the Court were to find that the ALJ "considered" Plaintiff's lumbar spine and mental impairments in formulating Plaintiff's RFC, as the Commissioner asserts,[5] the Court cannot say that substantial evidence supports the ALJ's decision not to include *any* functional limitations stemming from these impairments in the RFC.

<p style="text-align:center"><em>a.     Low Back Pain</em></p>

With respect to her lumbar spine impairment, Plaintiff argues that the ALJ erred in failing to include postural limitations in the RFC.  (ECF No. 13, PageID.767-69).  In her decision, the ALJ explained why she did not include such limitations in the RFC, stating:

> The above-described residual functional capacity assessment remains silent as to limitations regarding postural activities that cause no significant erosion of the light occupational base.  The undersigned notes that a small degree of limitation in climbing and balancing would not significantly impact any range of work.  While some stooping is required for work at all exertional levels, only occasional stooping is required for sedentary and light work.  Frequent stooping and crouching is required for medium, heavy, and very heavy work.

---

[5] The Commissioner argues that an ALJ is only required to *consider* an impairment when formulating the RFC and there is no requirement that the RFC *must* include restrictions reflecting a non-severe impairment.  (ECF No. 15, PageID.787-88) (citing *Plotkowski v. Comm'r of Soc. Sec.*, No. 20-12011, 2022 WL 413371, at *6 (E.D. Mich. Jan. 18, 2022)).  While this principle is a correct statement of the law, the RFC still must be supported by substantial evidence.  *See Hustin v. Comm'r of Soc. Sec.*, No. 23-cv-74, 2023 WL 6389030, at *3 (W.D. Mich. Aug. 22, 2023).

<p style="text-align:center">13</p>

> No amount of crouching is required for work at the sedentary and light exertional levels.  Limitations in kneeling and crawling would have very little impact on the sedentary, light, and medium occupational bases (Social Security Rulings 83-10p, 85-15, and 96-9p).

(PageID.61).   Thus, the ALJ appears to have considered – and rejected – the idea of including postural limitations in Plaintiff's RFC based on her belief that each such limitation did not significantly limit the occupational base.  Given the amount of record evidence supporting the need for various postural limitations, however, as well as the fact that the ALJ did not pose hypothetical questions to the VE regarding the impact of one or more postural limitations on the light occupational base, the Court cannot conclude that the ALJ's RFC finding (and/or Step Five finding) is supported by substantial evidence.

As set forth above, there is ample evidence in the record that Plaintiff is limited in the ability to perform several postural activities.  For example, the consultative examiner, Dr. Nims opined that Plaintiff's "ability to perform work-related activities such as bending, stooping, lifting, walking, crawling, squatting, carrying and traveling as well as pushing and pulling heavy objects is at least mildly impaired due to the objective findings discussed above."  (PageID.727).   Both state agency reviewers opined that Plaintiff can only occasionally climb ramps/stairs, stoop, kneel, crouch, and crawl, and can never climb ladders, ropes, or scaffolds.[6]  (PageID.106, 121).  And Dr. Ellsworth opined that Plaintiff

---

[6] The ALJ discounted the state agency reviewers' opinions about postural limitations, in large part, because they were inconsistent with "the minimal degenerative changes in imaging [studies] …." (PageID.57, 58).  However, no medical source agreed with the ALJ's characterization of Plaintiff's x-rays.  Indeed, the doctor who read and interpreted the x-rays at issue noted "moderate narrowing" at L5-S1; "mild anterior subluxation of L4 on L5"; hypertrophic degenerative changes throughout the posterior articular facets of the lumbar spine, worse from L3 through S1; and minimal anterior degenerative spurring at several levels.  (PageID.732).  It appears, then, that the ALJ improperly

can never twist, stoop, crouch/squat, or climb ladders or stairs.  (PageID.662).

Despite the existence of four medical opinions indicating that Plaintiff is limited in performing postural activities such as climbing, balancing, stooping, crouching, kneeling, and crawling, and the fact that the record included records of Plaintiff's regular visits to her treating physician for her lower back impairment, *see supra* at 7, the ALJ never posed a hypothetical to the VE about how such limitations would affect the occupational base of *light* work; rather, she asked only how the range of *sedentary* work would be affected by such limitations.  (PageID.88-90).  But the ALJ ultimately adopted an RFC of light work, meaning that there is no VE testimony as to the extent that occupational base is affected by these postural limitations.

Moreover, it is unclear whether the ALJ's analysis of this issue may have been based on a belief that each individual limitation – taken alone – did not significantly erode the occupational base of light work.  Specifically, the ALJ found that: (1) "a small degree of limitation in climbing and balancing would not significantly impact any range of work"; (2) only occasional stooping is required for light work; (3) no amount of crouching is required for light work; and (4) limitations in kneeling and crawling "would have very little impact" on the light occupational base.  (PageID.61 (citing Social Security Rulings

---

rejected the postural limitations the state agency reviewers believed necessary based on her own lay impression of Plaintiff's x-rays, which was improper.  *See Furlo v. Comm'r of Soc. Sec.*, No. 14-14392, 2015 WL 13741596, at *15 (E.D. Mich. Oct. 31, 2015) ("ALJ cannot interpret raw medical data"); *Alguire v. Colvin*, No. 7:14-CV-1580 (GLS/CFH), 2016 WL 1399373, at *10 (N.D.N.Y. Mar. 16, 2016) (finding error where "[r]ather than accept the medical providers' interpretation of the imaging studies and diagnostic testing, the ALJ took it upon himself to assess their meaning").  On remand, the ALJ should address the consistency of this evidence with the state agency reviewers' opinions about postural limitations.

("SSR") 83-10p, 85-15, and 96-9p)).  The Commissioner argues, then, that because "the

postural activities generally had little impact on the light occupational base, Plaintiff cannot

show any error in the ALJ's finding that she could perform the full range of light work[.]"

(ECF No. 15, PageID.792).  The Court disagrees.

As another district court recently explained in a very similar situation:

> Here, the ALJ relied on the Grids and SSRs 83-14, 85-15, and 96-9p
> to find that sedentary jobs existed in the national economy that
> Plaintiff could perform.  []  While the SSRs address each type of
> nonexertional limitation in isolation, none of them addresses the
> combined effects of all Plaintiff's nonexertional limitations.  *See SSR
> 96-9p*, 1996 WL 374185, at *8 (noting that "*occasional stooping*
> should, *by itself*, only minimally erode the unskilled occupational base
> of sedentary work") (emphasis added); *Id.* at *9 ("Even a need to
> avoid all exposure to [moving machinery and unprotected heights]
> would not, *by itself*, result in a significant erosion of the [unskilled
> sedentary] occupational base.") (emphasis added); SSR 85-15, 1985
> WL 56857, at *7 ("Where a person has *some limitation in climbing
> and balancing* and it is the *only* limitation, it would not ordinarily have
> a significant impact on the broad world of work.") (emphasis added).
> "[W]here a claimant has both exertional and non-exertional
> impairments, as in the instant case, the ALJ cannot rely upon the grids
> alone to determine non-disability and has to either obtain testimony
> from a vocational expert or make 'crystal-clear that the SSR is
> probative as to the way in which the nonexertional limitations impact
> the ability to work.'" *Scera nka v. Berryhill*, No. 3:17-1532, 2018 WL
> 4282782, at *4 (M.D. Pa. Sept. 7, 2018) (quoting *Allen [v. Barnhart*,
> 417 F.3d 396, 407 (3d Cir. 2005)]).  Any administrative notice that
> each nonexertional limitation is not significant is not sufficient to
> support a finding that Plaintiff's combined nonexertional limitations
> did not significantly erode the number of sedentary work available in
> the national economy.  *See, e.g., Morel v. Colvin*, No. 4-16-CV-
> 00476-MWB-GBC, 2017 WL 1179972, at *4 (M.D. Pa. Mar. 3,
> 2017), *adopted by* 2017 WL 1162946 (M.D. Pa. Mar. 29, 2017)
> (remanding case where ALJ relied on the Grids and SSRs without
> obtaining VE testimony on grounds that "none of the SSRs are 'crystal
> clear' about the erosion of the occupational base given the non-
> exertional limitations, and that reliance on the SSRs, which each
> address only one type of non-exertional limitation, is inappropriate

> when there is a wide variety of non-exertional limitations").  Even if
> each of Plaintiff's nonexertional limitations did not have a significant
> effect on sedentary work as noted in SSRs 83-14, 85-15, and 96-9p,
> "[i]t is well-established that an analysis must be made 'not only [of]
> the disabling effect of each of the [claimant's] ailments, but also the
> combined effect of all of [these] impairments.'"  *Dellolio v. Heckler*,
> 705 F.2d 123 (5th Cir. 1983) (citation omitted) (emphasis added).

*Lollar v. Kijakazi*, No. 3:20-CV-3298-BH, 2022 WL 4133309, at *8 (N.D. Tex. Sept. 12,

2022) (emphasis in original).  In this case, then, while each individual limitation – taken

alone – might not significantly erode the occupational base of light work, Plaintiff's

limitations should have been considered in combination.  *See id.* ("To the extent that the

ALJ relied solely on the Grids and SSRs in finding that other work existed in the national

economy that Plaintiff could perform, this was error."); *see also Hull v. Comm'r of Soc.

Sec. Admin.*, No. 8:20-cv-00093-MGL-JDA, 2020 WL 6888180, at *9 (D.S.C. Nov. 6,

2020) (remanding where the ALJ addressed each manipulative and postural limitation

individually but failed to explain how the combination of nonexertional limitations would

not erode the occupational base such that VE testimony was required).

In short, given the significant amount of medical evidence which appears to support

the necessity of at least some postural limitations, and the fact that the ALJ opted not to

present a hypothetical to the VE regarding how such limitations would affect the light

occupational base, the Court cannot conclude that the failure to include such limitations in

the RFC was harmless.

### b.    *Mental Impairments*

Plaintiff also argues that the ALJ erred in failing to include limitations stemming

from her mental impairments in the RFC.  (ECF No. 13, PageID.764-66).  Indeed, in

considering the "paragraph B" criteria at Step Two, which are used to rate the severity of mental impairments, the ALJ specifically found that Plaintiff's anxiety and depression cause her to experience mild limitations in the areas of understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing herself.  (PageID.52).  After making these findings, the ALJ included a boilerplate statement that her RFC assessment "reflects the degree of limitation the undersigned has found in the "paragraph B" mental function analysis. (PageID.53).  However, the ALJ's RFC analysis itself is silent as to the rationale for not including any mental limitations.

As set forth above, the record contains medical evidence suggesting that Plaintiff's mental impairments cause functional limitations.   Specifically, both state agency reviewers, the treating primary care physician, and the consulting psychologist all found that Plaintiff has *some* degree of mental limitations (although they disagreed on the degree of those limitations).  For example, the consultative examiner, Dr. Dickson, opined that Plaintiff is mildly limited in the ability to perform activities within a schedule; maintain regular attendance; be punctual within customary tolerances; complete a normal workday and workweek; respond appropriately to coworkers, supervisors, and others in the workplace; and deal with normal pressures in a competitive work environment. (PageID.719).  Similarly, the state agency reviewers opined that Plaintiff is *moderately* limited in the ability to interact appropriately with the general public but retains the ability to perform "detailed work activities" (PageID.108-09) and "would have difficulty completing complex tasks on a sustained basis" and "needs [an] environment with [only]

18

occasional contact with others" (PageID.122-23).  And, finally, Dr. Ellsworth opined that Plaintiff would be "off task" 25% or more of a typical workday due to her symptoms, and has "no useful ability to function" or is "unable to meet competitive standards" in numerous areas required to perform even unskilled work.  (PageID.665-66).

In light of this evidence, the Commissioner argues that the ALJ was merely *required to consider* the possible effects of a non-severe impairment on Plaintiff's ability to work, but was not *required to include* restrictions reflecting a non-severe condition in the RFC. (ECF No. 15, PageID.787-88) (citing cases).  While this is an accurate principle of law, it is also not enough for the ALJ to simply "consider" the effects of Plaintiff's non-severe impairments; she must articulate her rationale well enough for the reviewing court to understand *why* she found that Plaintiff's non-severe, mental impairments did not impact her functional abilities.  *See Bailey v. Comm'r of Soc. Sec.*, No. 98-3061, 1999 WL 96920, at *3-4 (6th Cir. 1999).  Here, where the ALJ found limitations in all four areas of the "paragraph B" criteria, and where all of the medical opinions recognized some degree of limitation in Plaintiff's mental functioning, the ALJ should have either incorporated these findings into the RFC or explained why these deficits do not translate into functional limitations.  Because the ALJ did not do so, her "decision leaves the reader with the impression that she failed to consider [the plaintiff's] non-severe mental impairment in formulating her RFC, which is problematic." *Alotta v. Comm'r of Soc. Sec.*, No. 19-10919, 2019 WL 9654866, at *6 (E.D. Mich. Nov. 15, 2019); *see also Katona v. Comm'r of Soc. Sec.*, No. 14-10417, 2015 WL 871617, at *6 (E.D. Mich. Feb. 27, 2015) ("to the extent an ALJ determines that an identified impairment, severe *or non-severe*, does not result in any

work-related restrictions or limitations, the ALJ is required to state the basis for such conclusion") (emphasis in original) (internal quotations omitted); *Biehl v. Comm'r of Soc. Sec.*, No. 14-10293, 2015 WL 736366, at *21 (E.D. Mich. Feb. 20, 2015) (remanding where the ALJ's RFC assessment was silent as to the plaintiff's mental limitations and, thus, it was "at best, unclear whether the ALJ considered the effect of plaintiff's depression when formulating her RFC").

In summary, while the ALJ's decision contains a thorough discussion of the opinion evidence, the record evidence suggests that Plaintiff's back and mental impairments clear the "*de minimis*" Step Two hurdle, and regardless, the ALJ's failure to include any postural or mental limitations in the RFC is not supported by substantial evidence. As such, remand is required for a more thorough evaluation of the evidence, assessment of Plaintiff's RFC, and consideration of whether she is disabled under the Act.

## III.    CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that the Commissioner's Motion for Summary Judgment **(ECF No. 15)** be **DENIED**, Plaintiff's Motion for Summary Judgment **(ECF No. 13)** be **GRANTED IN PART** to the extent it seeks remand and **DENIED IN PART** to the extent it seeks an award of benefits, and that, pursuant to sentence four of 42 U.S.C. § 405(g), this case be **REMANDED** for further proceedings consistent with this Report and Recommendation.

Dated: November 27, 2023                    s/David R. Grand
Ann Arbor, Michigan                         DAVID R. GRAND
                                            United States Magistrate Judge

## <u>NOTICE REGARDING OBJECTIONS</u>

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and Fed. R. Civ. P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).  The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *See Willis v. Sec'y of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. L.R. 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on November 27, 2023.

<div style="margin-left:40%;">
s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager
</div>